SO ORDERED:

*Vernon Broderick*

HON. VERNON S. BRODERICK  9/4/2018
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JASON CAMACHO AND ON BEHALF OF
ALL OTHER PERSONS,

         Plaintiff,

v.

NFP CORP.,

         Defendant.

------------------------------------------------------------x

Case No. 17-cv-08785-VSB

## JOINT STIPULATION FOR DISMISSAL OF ENTIRE ACTION WITH PREJUDICE PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii)

Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Plaintiff JASON CAMACHO ("Plaintiff") and Defendant NFP CORP. ("Defendant") stipulate and jointly request that this Court enter a dismissal with prejudice of Plaintiff's Complaint in the above-entitled action, in its entirety, with the Court to retain jurisdiction over the parties and the action until August 1, 2021 for the sole purpose of enforcement of the parties' obligations under Section 2(C) of the parties' Confidential Settlement Agreement and Release of Claims. Section 2(C) of the Confidential Settlement Agreement and Release of Claims reads as follows:

> NFP shall, within thirty-six (36) months of the Effective Date ("the Remediation Period"), use good faith efforts to cause those portions of the Website or Websites that are covered by Title III of the ADA to be in a condition or state that allows individuals with disabilities within the meaning of the ADA to gain the same information with an ease of use substantially equivalent to that of a non-disabled person using the Website(s) ("ADA Compliant"). The Parties agree that being in substantial conformance with WCAG 2.0 Level AA or WCAG 2.1 shall constitute "ADA Compliant," but that substantial conformance with WCAG 2.0, Level AA or WCAG 2.1 is neither the test for ADA Compliance nor the sole method of achieving ADA Compliance. The Parties further agree that, notwithstanding anything contained in this provision or in this Agreement, the Website(s) shall be permitted to link to websites owned or operated by others containing Third-Party Content (as defined below) that may not be accessible to individuals with disabilities. The Parties further agree that ADA Compliant shall include substantial conformance with any standard later established or recognized by the

United States Supreme Court, any U.S. Circuit Court of Appeals or the U.S. Department of Justice. (The term "Third-Party Content" refers to web content that is not developed, owned, or operated by Defendant.) However, if a judicial, legislative or regulatory body enacts any legislation or rule, or if the United States Supreme Court, the U.S. Circuit Court of Appeals for the Second Circuit, or a New York State appellate court renders a decision, pursuant to which the Website(s) is/are not considered a place of public accommodation or business establishment under the Disability Laws, it is understood that NFP will be relieved of the obligations set forth in this Section 2(C). If Defendant's ability to meet the deadline for compliance with this Section 2(C) is delayed by third-party vendors, acts of God, force majeure or other reasons that are outside of Defendant's control, the Parties' respective counsel shall meet and confer regarding an extended deadline. If the Parties cannot reach an agreement regarding an extended deadline after such meet-and-confer efforts, either Party will have the right to seek judicial relief.

Following the Remediation Period, NFP shall, either on its own or through a third party vendor, monitor the Website on a periodic basis to ensure that it continues to be ADA Compliant. NFP agrees that if any portion of the Website is discovered to be non-ADA Compliant, it will promptly remediate that portion of the Website and will cause it to be ADA Compliant.

A true and correct copy of the Settlement Agreement is annexed hereto as Exhibit A.

Each party shall bear her or its own fees, costs and attorneys' expenses.

DATED: Aug. 29, 2018

Respectfully submitted,

GEHI & ASSOCIATES

By: _____
Ben Baumgartner, Esq.
104-05 Liberty Ave.
Ozone Park, NY 11417
Tel: 718.577.0711
Fax: 718.263.1685
nmgehi@gmail.com

*Attorneys for Plaintiff*

2

DATED: August 30, 2018

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

By: /s/ Evan B. Citron

Evan B. Citron, Esq.
599 Lexington Avenue, 17th Floor
New York, NY 10022
Tel: 212.492.2500
Fax: 212.492.2501
ecitron@ogletreedeakins.com

*Attorneys for Defendant NFP Corp.*

35388862.1

# EXHIBIT A

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (this "**Agreement**") is made and entered into as of this ___ day of August 2018 (the "**Effective Date**"), by and between Jason Camacho ("**Camacho**"), on the one hand, and NFP Corp. ("**NFP**"), on the other hand. For the purposes of this Agreement, Camacho and NFP are each referred to individually as a "**Party**" and collectively as the "**Parties**."

## 1. RECITALS

A. On November 11, 2017, Camacho filed an action against defendant NFP in the United States District Court for the Southern District of New York, Case No. 1:17-cv-08785, (the "**Action**"), asserting certain legal claims against defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. ("**ADA**"), the New York State Human Rights Law ("**NYSHRL**"), the New York State Civil Rights Law ("**NYSCRL**"), and the New York City Human Rights Law ("**NYCHRL**") in connection with NFP's alleged failure to maintain the website found at www.nfp.com (the "**Website**") in a legally accessible manner.

B. NFP disputes the claims and allegations set forth in the Action, and has denied and continues to deny that it has any liability to Camacho for any such claims asserted as of the Effective Date or otherwise.

C. The Parties desire to avoid the risk, uncertainty, inconvenience, delay, and expense of litigation and have therefore agreed to fully and finally settle any and all claims asserted, or that could have been asserted by Camacho, under the ADA, the NYSHRL, NYSCRL, the NYCHRL, and/or any other laws of similar import prohibiting discrimination on the basis of disability in public accommodations or business establishments (the "**Disability Laws**"), as well as any and all claims relating to the Website or other websites owned or operated by NFP (the "**Websites**"), as set forth and under the terms in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the above Recitals, the mutual promises, covenants, and undertakings contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. Recitals

Recitals A-C above are incorporated into this Agreement as if set forth fully in this Agreement.

2.  Consideration

   A.   As a full and complete compromise of all Released Claims (as defined below), NFP shall, within fifteen (15) business days of NFP's counsel's receipt of a fully-executed copy of this Agreement, completed and executed Form W-9 from Law Offices of N. M. Gehi, P.C. ("Gehi") and a fully-executed Joint Stipulation of Dismissal of the Action, shall deliver to Gehi ((together with Jeffrey M. Gottlieb and Dana L. Gottlieb, "Camacho's Counsel"), a check in the amount agreed to in a separate confidential letter from NFP's counsel to Gehi, dated July 31, 2018 (the "Settlement Payment"). The Settlement Payment consists of claimed damages paid to Camacho and attorneys' fees, costs, and expenses incurred or to be incurred in this matter, which shall be paid to Gehi in lieu of statutory fees and costs that might otherwise be recovered under the any of the Disability Laws.

   B.   The Parties expressly acknowledge and agree that the Settlement Payment (a) is the result of good faith negotiations conducted by and between the Parties; (b) represents the sole consideration for the release of the Released Claims and the creation of this Agreement; and (c) constitutes fair and reasonable consideration for the release of any and all Released Claims. The party making the Settlement Payment will issue a 1099-MISC form to Camacho and Gehi reflecting the Settlement Payment amount as required by applicable law. Camacho and Gehi shall be solely responsible for any federal, state and local taxes due on their respective portions of the Settlement Payment, and each specifically agrees to indemnify and hold NFP harmless for and from any and all claims involving any federal, state or local taxes relating to this Agreement. The Parties and Camacho's Counsel further agree that NFP has had, and shall have, no involvement in or responsibility or liability for any allocation, handling, treatment or receipt of the Settlement Payment by or between Camacho and Camacho's Counsel.

   C.   NFP shall, within thirty-six (36) months of the Effective Date ("the Remediation Period"), use good faith efforts to cause those portions of the Website or Websites that are covered by Title III of the ADA to be in a condition or state that allows individuals with disabilities within the meaning of the ADA to gain the same information with an ease of use substantially equivalent to that of a non-disabled person using the Website(s) ("ADA Compliant"). The Parties agree that being in substantial conformance with WCAG 2.0 Level AA or WCAG 2.1 shall constitute "ADA Compliant," but that substantial conformance with WCAG 2.0, Level AA or WCAG 2.1 is neither the test for ADA Compliance nor the sole method of achieving ADA Compliance. The Parties further agree that, notwithstanding anything contained in this provision or in this Agreement, the Website(s) shall be permitted to link to websites owned or operated by others containing Third-Party Content (as defined below) that may not be accessible to individuals with disabilities. The Parties further agree that ADA Compliant shall include substantial conformance with any standard later established or recognized by the United States Supreme Court, any U.S. Circuit Court of Appeals or the U.S. Department of Justice. (The term "Third-Party Content" refers to web content that is not developed, owned, or operated by Defendant.) However, if a judicial, legislative or regulatory body enacts any legislation or rule, or if the United States Supreme Court, the U.S. Circuit Court of Appeals for the Second Circuit, or a New York State appellate court renders a decision, pursuant to which the Website(s) is/are not considered a place of public accommodation or business establishment under the Disability Laws, it is understood that NFP will be relieved of the obligations set forth in this

2

Section 2(C). If Defendant's ability to meet the deadline for compliance with this Section 2(C) is delayed by third-party vendors, acts of God, force majeure or other reasons that are outside of Defendant's control, the Parties' respective counsel shall meet and confer regarding an extended deadline. If the Parties cannot reach an agreement regarding an extended deadline after such meet-and-confer efforts, either Party will have the right to seek judicial relief.

Following the Remediation Period, NFP shall, either on its own or through a third party vendor, monitor the Website on a periodic basis to ensure that it continues to be ADA Compliant. NFP agrees that if any portion of the Website is discovered to be non-ADA Compliant, it will promptly remediate that portion of the Website and will cause it to be ADA Compliant.

3. General Release and Waiver; Notice and Cure

    A. Upon execution of this Agreement, Camacho, on his own behalf, and on behalf of his grantees, agents, representatives, heirs, spouse, executors, administrators, devisees, trustees, successors, assigns, assignors, attorneys, and any other entities in which Camacho has any interest (collectively, the **"Releasing Parties"**), hereby agrees to release and forever discharge NFP and its respective past and present employees, representatives, officers, directors, shareholders, principals, attorneys, accountants, insurers, receivers, advisors, consultants, partners, partnerships, owners, members, parents, divisions, subsidiaries, affiliates, assigns, agents, independent contractors, successors, heirs, predecessors in interest, joint ventures, commonly-controlled corporations and any other entity or individual acting or purporting to act on NFP's behalf with respect to the matters set forth in this Agreement (collectively, the **"Released Parties"**) from any and all liabilities, causes of action, charges, complaints, suits, claims, obligations, costs, losses, damages, rights, judgments, attorneys' fees, expenses, bonds, bills, penalties, fines, and all other legal responsibilities of any form whatsoever, whether known or unknown, presently existing or arising in the future, suspected or unsuspected, or fixed or contingent, arising under any theory of law, whether common, constitutional, statutory or other, of any jurisdiction, foreign or domestic, whether in law or in equity, which the Releasing Parties or any of them now have, ever had, or may claim to have against any of the Released Parties, including, without limitation, those arising out of or relating to: (i) the Website(s); (ii) the subject matter of this Agreement; (iii) any matters alleged in the Action (including, without limitation, any claims, events, conditions or matters alleged in the Complaint in the Action); (iv) any acts or omissions by any of the Released Parties occurring prior to or as of the Effective Date; (v) any violation of any of the Disability Laws; (vi) any feature, element, condition or manner of operation of any place of public accommodation owned, operated, or controlled by NFP, as such feature, element, condition, or manner of operation existed as of the Effective Date; and (vii) any costs, attorneys' fees, expert fees, or expenses incurred or to be incurred by the Releasing Parties in connection with the subject matter of this Agreement (collectively, the **"Released Claims"**). The Releasing Parties hereby acknowledge and agree that, except as expressly set forth in this Agreement, the Released Parties have no other liabilities or obligations, of any kind or nature, owed to the Releasing Parties, in connection with or relating to the Released Claims or otherwise.

3

B. Camacho acknowledges that he may hereafter discover facts different from, or in addition to, those which he now believes to be true with respect to the Released Claims of this Agreement. On his own behalf and on behalf of all of the Releasing Parties, Camacho agrees that the foregoing release and waiver shall be and remain effective in all respects notwithstanding such different or additional facts or discovery thereof, and that this Agreement contemplates the extinguishment of all such Released Claims. By executing this Agreement, Camacho acknowledges the following: (a) he is represented by counsel of his own choosing; (b) he has read and fully understands this Agreement; and (c) he has been specifically advised by his counsel of the consequences of the above waiver and this Agreement generally.

D. Camacho agrees not to sue or file any charge, complaint, grievance, demand for arbitration, or other proceeding against any of the Released Parties in connection with the Released Claims in any forum or assist or otherwise participate willingly or voluntarily in any claim, arbitration, suit, action, investigation or other proceeding of any kind which relates to any matter that involves the Released Claims, unless required to do so by court order, subpoena or other directive by a court, administrative agency, arbitration panel or legislative body, or unless required to enforce this Agreement. To the extent any such claim, arbitration, suit, action, investigation or other proceeding may be brought by a third party, Camacho expressly waives any claim to any form of monetary or other damages, or any other form of recovery or relief in connection with such a claim, except for statutorily required witness fees.

E. In the event Camacho believes at any time that is at least thirty-six (36) months after the Effective Date that any feature of, or any means of accessing, the Website(s) constitutes a violation of the accessibility requirements of the ADA or any other Disability Laws because Camacho cannot effectively use any feature, function or element of the Website(s), Camacho shall: (i) provide written notice to NFP detailing the claimed violation(s); (ii) allow NFP ninety (90) days after such notice is received to cure such alleged violation(s); and (iii) following such ninety (90) day cure period, engage in good faith meet-and-confer discussions with NFP for a period of at least thirty (30) days in an effort to resolve any remaining dispute regarding the claimed violation(s). Camacho may not institute any legal action or proceeding against NFP or any of the Released Parties or make any claim or demand based on any accessibility issues concerning the Website(s) unless he can establish that he cannot effectively use any feature, function or element of the Website(s) and until (i) thirty-six (36) months since the Effective Date have passed and (ii) Camacho has complied fully with this Section 3(E).

4. Confidentiality

The Parties and their counsel expressly agree to keep the terms and existence of this Agreement, and all documents and things exchanged during settlement negotiations leading up to this Agreement, including all facts leading up to and alleged in the Action (collectively "**Confidential Information**"), strictly confidential and shall not reveal any Confidential Information or the names of the Parties to this Agreement to any other person or entity, except: (i) pursuant to lawful process or judicial order; (ii) as is reasonably necessary to be disclosed to Camacho's spouse, and/or the Parties' accountants, tax advisors, and attorneys (provided the Parties notify such recipient of their confidentiality obligations hereunder and obtains written assurances that such recipient will ensure that Confidential Information is only disclosed in

4

accordance with the terms of this Agreement); and/or (iii) in any dispute between any of the Parties or their counsel. However, NFP and its counsel may, in the ordinary course of business, disclose such information to its attorneys, accountants, boards, insurers, assignees, or prospective purchasers, to other persons as required to effectuate the terms of this Settlement Agreement. NFP and its counsel may also disclose the contents of Paragraph 2C to defend against any other claims with respect to the issues herein or related issues as it deems appropriate for defending against such other claims. The Parties further agree that if they are required by legal process to disclose Confidential Information, they will provide the other Party with at least ten (10) business days' notice prior to the required disclosure so that it may seek an appropriate protective order or other appropriate relief.

5. <u>Injunctive Relief; Remedies</u>

Camacho and Camacho's Counsel expressly acknowledge and agree that the confidentiality obligations set forth in Section 4 are material inducements to NFP to enter into this Agreement. Furthermore, Camacho and his counsel acknowledge and agree that the disclosure of information related to the terms or existence of this Agreement as prohibited by **Section 4** would cause NFP to suffer immediate, irreparable injury for which money damages would be an inadequate remedy, and that NFP will be entitled to injunctive relief, as provided for under applicable law or equity, without being required to post any bond or other security, in the event of any such breach. Injunctive relief will not be deemed the exclusive remedy for any such breach, but will be in addition to all other remedies available under applicable law or equity.

6. <u>Dismissal</u>

Within three (3) court days of confirmation from the courier service that the Settlement Payment has been delivered to Camacho's Counsel, Camacho expressly consents that NFP may file a pleading substantially identical to that attached as **Exhibit A** to this Agreement (the "**Stipulated Dismissal**"), thereby dismissing the Action with prejudice, each Party bearing his or its own attorneys' fees, experts' fees, and costs. Each Party hereby irrevocably authorizes and directs its attorneys of record to execute and deliver to the Court in the Action the Stipulated Dismissal, so that the same may be filed with such Court in accordance with this Agreement.

7. <u>No Admission of Fault or Liability</u>

It is understood and agreed that this Agreement and the performance by any Party of its obligations herein, including the payment of the Settlement Payment by NFP, are for the sole purpose of compromising disputed claims, and that this Agreement shall not be deemed or construed as an admission of liability or fault by any Party, with liability and fault being expressly denied by each Party.

8. <u>Investigation</u>

Each of the Parties has made such investigation of the facts pertaining to this Agreement, as he or it deems necessary. The Parties understand that if any fact with respect to any matter

5

Case 1:17-cv-08785-VSB   Document 30-1   Filed 08/30/18   Page 10 of 13

covered by this Agreement is found hereafter to be in addition to, other than, or different from, the facts now believed by the Parties to be true, each Party expressly accepts and assumes the risk of such possible additional or different facts and agrees that this Agreement shall be and remain effective notwithstanding such additional or different facts.

9.   Integration Clause

This Agreement contains the entire agreement of the Parties concerning the subject matter of this Agreement and supersedes any and all prior or contemporaneous written or oral representations, agreements, arrangements or understandings among them concerning such subject matter. There are no representations, agreements, arrangements or understandings, oral or written, between the Parties relating to the subject matter of this Agreement that are not fully expressed in this Agreement.

10.   Consultation With Counsel

The Parties represent and warrant that they have presented their respective counsel with this Agreement, that their respective counsel have had the opportunity to review this Agreement and that they are executing this Agreement of their own free will after having received advice from their respective counsel regarding execution of this Agreement.

11.   Governing Law

This Agreement shall be governed by, interpreted and construed pursuant to the laws of the State of New York, without giving effect to any conflicts of law principles.

12.   Disputes and Enforcement

The Parties agree that they will work cooperatively to resolve any issues, concerns, and/or disputes regarding the Parties' respective obligations under this Agreement. Accordingly, the Parties agree that any such issues, concerns, or disputes shall be put in writing and that the other Party shall have thirty (30) days to respond in writing to such issues, concerns, or disputes, before any enforcement action can be commenced. The prevailing Party in any enforcement action made necessary if these notice and cure or meet and confer efforts are unsuccessful shall be entitled to recover its reasonable attorneys' fees, costs and expenses from the losing Party.

13.   Severability

If any one or more of the provisions of this Agreement should be ruled wholly or partly invalid or unenforceable by a court or other government body of competent jurisdiction, then: (i) the validity and enforceability of all provisions of this Agreement not ruled to be invalid or unenforceable shall be unaffected; (ii) the effect of the ruling shall be limited to the jurisdiction of the court or other government body making the ruling; (iii) the provision(s) held wholly or partly invalid or unenforceable shall be deemed amended, and the court or other government body is authorized to reform the provision(s), to the minimum extent necessary to render them valid and enforceable in conformity with the Parties' intent as manifested herein; and (iv) if the ruling and/or the controlling principle of law or equity leading to the ruling is subsequently

6

overruled, modified, or amended by legislative, judicial, or administrative action, then the provision(s) in question as originally set forth in this Agreement shall be deemed valid and enforceable to the maximum extent permitted by the new controlling principle of law or equity.

14. No Waiver

The failure of any Party to insist upon compliance with any of the provisions of this Agreement or the waiver of compliance, in any instance, shall not be deemed or construed as a waiver or relinquishment by such Party of such provision in any other instance or as a waiver or relinquishment by such Party of any other provision of this Agreement.

15. Modification and Amendment

This Agreement may not be modified, altered, amended or repealed, in whole or in part, except upon written agreement executed by both Parties.

16. No Reliance

Each of the Parties represents and warrants that, except for the representations and warranties specifically set forth in this Agreement, he or it does not rely, and have not relied, on any representation or statement made by any other Party to this Agreement, on any representation or statement made by anyone acting on behalf of any Party to this Agreement, or any representation or statement made by any other person.

17. No Assignment or Transfer of Claims

Camacho represents and warrants that: (i) he owns the Released Claims; (ii) no other person or entity has any interest in the Released Claims; (iii) he has not sold, assigned, conveyed or otherwise transferred any Released Claim or demand against NFP, or any Released Claim or demand against any of the other Released Parties; and (iv) he has the sole and exclusive right to settle and release such Released Claims. Camacho represents and warrants that to the best of his knowledge, information and belief, (i) he has no actual or potential claims against NFP or any of the Released Parties that are not included in the Released Claims and (ii) he has no knowledge of any pending, threatened or potential claims against NFP and/or the Released Parties. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, successors and assigns.

18. Each Party to Bear Its Own Attorneys' Fees, Costs and Expenses

Except as expressly provided for in this Agreement, each Party shall bear her or its own attorneys' fees, costs and expenses incurred in relation to this Action.

19. Multiple Counterparts

This Agreement may be executed in counterparts, each of which may be executed and delivered by facsimile or PDF electronic delivery with the same validity as if it were an ink-

7

signed document and each of which shall be effective and binding on the Parties as of the Effective Date. Each such counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one and the same Agreement.

### 20. Authority of Signatories

Each of the signatories to this Agreement represents and warrants that he/it is duly and fully authorized to act for the Party on whose behalf he/it signs this Agreement and that any and all required consents, authorizations or approvals have been obtained by or on behalf of such Party.

### 21. Construction

Each Party to this Agreement has participated and cooperated in the drafting and preparation of this Agreement. In any construction to be made of this Agreement, the same shall not be construed against any Party on the ground that such Party drafted this Agreement.

### 22. Representation/Warranty Regarding Other Potential Claimants or Legal Claims

Camacho and Camacho's Counsel each represent and warrant that he/it has not disclosed or revealed the facts alleged in the Action to any potential plaintiff or person with a disability who could complain about the accessibility of the Website(s), or to any attorney generally engaged in representing persons with disabilities in individual or class action litigation under the Disability Laws.

Camacho and Camacho's Counsel each represent and warrant that neither of them is aware of any potential plaintiff or potential putative class member other than Camacho, or any attorney other than Camacho's Counsel, who intends to make demands or bring litigation based on the subject matter of the Action. Camacho and Camacho's Counsel each further represent and warrant that neither of them has been notified or otherwise informed of any such intention or consideration of such a demand or litigation.

Camacho and Camacho's Counsel each further represent and warrant that they will not solicit, encourage, or induce other persons to bring claims against any Released Party, or refer other persons to other counsel for the purpose of bringing claims against any Released Party based on the matters described in the Action, provided, however that nothing in this paragraph shall be construed as a restriction of such counsel's right to practice in contravention of the New York Rules of Professional Conduct.

*[Signatures on Next Page]*

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

IN WITNESS WHEREOF, the undersigned Parties do hereby execute this Agreement as of the Effective Date.

**JASON CAMACHO ("CAMACHO")**

*[signature]*

By: Jason Camacho

**NFP CORP.**

*[signature]*

By:
Its: Associate General Counsel

APPROVED AS TO FORM AND CONTENT (AND AGREED, WHERE APPLICABLE):

**LAW OFFICES OF N. M. GEHI, P.C.**, attorneys for Camacho

*[signature]*

By: N. M. Gehi, Esq.

**GOTTLIEB AND ASSOCIATES**, attorneys for Camacho

*[signature]*

By: Jeffrey M. Gottlieb, Esq.

34732332.1

34732332.1

9